USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/16/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v.-

KASSEM HARRIS,

                Defendant.

19 cr 746 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Defendant Kassem Harris ("Defendant") was charged by Complaint on September 12, 2019, with one count of being a felon in possession of ammunition and a firearm in violation of 18 U.S.C. §§ 922(g)(1) and (2). (ECF No. 1.) On January 21, 2021, Defendant filed a motion to suppress evidence obtained during and subsequent to a search of Defendant's residence on the grounds that the search was conducted in violation of the Fourth Amendment. (ECF No. 28.) In the alternative, Defendant moves for a hearing to resolve disputed factual issues. (ECF No. 29 at 5.) For the following reasons, Defendant's motion is denied.

## BACKGROUND

    The following facts are drawn from the docket and the parties' briefs and are undisputed, unless otherwise indicated.

    On September 30, 2014, Defendant was charged by Indictment with one count of conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 and one count of Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951 and 2. (Case No. 17-cr-645, ECF No. 1.) On February 27, 2015, Defendant pled guilty to the conspiracy count. On June 19, 2015, District

Judge Cathy Seibel sentenced Defendant to 36 months' incarceration to be followed by 36 months' supervised release. (Case No. 17-cr-645, ECF No. 18.)

Judge Seibel imposed special conditions on Defendant's supervised release, including the condition that:

> "The defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to search may be grounds for revocation. The defendant shall inform any other occupants that the premises may be subject to search pursuant to this condition."

(*Id*.)

**Port Chester Shootings**

In July and August 2019, while Defendant was on supervised release, there were at least three shootings in Port Chester, New York:

- On or about July 12, 2019, Defendant's former co-defendant, Savion Smith ("Smith") was shot in the leg. (ECF No. 30 ¶ 5.) Defendant admitted in an August 12, 2019 interview that he was present with Smith during this shooting. (ECF No. 32 at 11.)

- On August 1, 2019, another shooting occurred in Port Chester. (ECF No. 32 at 12.)

- In the early morning of August 6, 2019, Charles Elliot was shot and killed. (*Id*. ¶ 8.) Savion Smith purportedly attempted to enter the crime scene following the shooting. (*Id*. ¶ 10.) Defendant admitted in an August 12, 2019 interview that he was present with Smith during this shooting. (ECF No. 32 at 11.) Law

enforcement later believed that Defendant may have been the intended victim of the August 6, 2019 shooting. (ECF No. 30 ¶ 22.)

**The Robbery**

On August 5, 2019, Henry Ceballos ("Ceballos") was purportedly robbed. (*Id*. ¶ 6.) On August 7, 2019, Ceballos identified Defendant and others as perpetrators of the alleged August 5, 2019 robbery. (*Id*. ¶ 12.) Video surveillance of the alleged robbery shows an individual who Ceballos identified as Defendant wearing a red shirt, playing cards on a car, and using a backpack. (ECF No. 32 at 10.) Although one of the alleged perpetrators of the robbery was arrested on August 9, 2019, Defendant was not arrested at that time. (*Id*. ¶ 14.) On August 12, 2019, Probation conferred with local law enforcement which indicated that "PD does not want to file a warrant yet b/c they want to talk to [Defendant] about the Robbery and the recent shootings in Pt. Chester associated with another PO O-Savion Smith who was the victim of a gunshot to his leg." (*Id*. ¶ 15.)

On August 12, 2019, following calls between law enforcement, Probation, and Defendant's mother, Defendant turned himself in to the Port Chester police. (*Id*. ¶ 18.) Defendant was arrested and charged with robbery. (*Id*. ¶ 19.) Defendant was interviewed by local law enforcement and repeatedly denied robbing Ceballos, instead maintaining that Ceballos and Defendant were involved in a fight and that Ceballos initiated the fight. (*Id*. ¶ 21.) Detectives also allegedly informed Defendant that he was the intended victim of the August 6, 2019 shooting and that Defendant should cooperate with the shooting investigation so that "he could help himself with respect to the 'robbery' case." (*Id*. ¶ 22.)

On August 17, 2019, Defendant posted bail on the robbery case. (*Id*. ¶ 23.) On August 21, 2019, Defendant met with Probation and again denied participating in a robbery and indicated that Ceballos initiated a fight. (*Id*. ¶ 26.)

**The Search**

On September 5, 2019, Probation noted that Probation "is working with [Taskforce] on the shootings in Pt. Chester and a SEARCH of [Defendant's] residence may be organized for 9/10… PO AM (Anthony Macchia) noted the 2 PTPD Detectives that are working on the case and JL is aware of same and working with them as well." (*Id*. ¶ 30.) On September 10, 2019, Probation sent Judge Seibel a request for summons to address Defendant's alleged violations of supervised release. (*Id*. ¶ 31.) On September 11, 2019, Judge Seibel summoned Defendant to appear before the court on October 1, 2019. (*Id*. ¶ 32.) Later that day, Probation noted that a search of Defendant's residence was scheduled for 5:45 a.m. on the following day and that the search was to be conducted with multiple law enforcement agencies, including Port Chester PD and the FBI. (*Id*. ¶ 33.)

On September 12, 2019, a warrantless search was conducted of Defendant's residence at approximately 6:00 a.m. (*Id*. ¶ 35.) Tyrone Watkins opened the door and law enforcement proceeded to search a bedroom that Defendant was located in.[1] (*Id*. ¶ 38.) Defendant was also briefly interviewed by local law enforcement about his knowledge of a recent homicide in Port Chester. (*Id*. ¶ 38.) Probation found a firearm in a backpack hanging on the closet door at the end of the bed in Defendant's room. (*Id*. ¶ 38.) Defendant alleges that officers searched for a gun and stopped searching as soon as the firearm was found. (ECF No. 33 at 4.) Probation notes entered at 6:05 a.m. on September 12, 2019 indicate that "The Westchester County Save Streets Task

---

[1] Mr. Watkins declared, under penalty of perjury, that he did not consent to law enforcement officers' entry into his home. (ECF No. 30-3 at 1.)

Force had obtained information that [Defendant] was involved in gang-on-gang acts of violence, including a recent shooting." (*Id.* ¶ 39.)

**Justification for Search**

According to the Government, Probation drafted a search plan for the September 12, 2019 search that referred to "Pending VOSR Summons 10/01/2019," "History of Violence," "Weapons Use," and "Gang Affiliation" under "Defendant/Offender Risks"; cited "Search Condition" under "Search Authority"; identified "Documents Related to Violation," "Firearm," and "Ammunition," under "Description of contraband/items sought"; and noted, in the description of "Reasonable Suspicion," that Defendant was, among other things, "arrested for a robbery on 08/12/19," was "at the scene of a recent shooting," was a "member of the Crips," and there have been "acts of violence" and has been "ongoing gang violence between the Bloods and Crips." (ECF No. 32 at 14.) Defendant on the other hand, avers that the Probation Search Plan Report reads "Subject of Active Criminal Investigation, Criminal Association" under "Reasonable Suspicions" and in the "Details" sections, provides, as an explanation for the search:

> The FBI Safe Streets Task Force is assisting PCPD with investigating ongoing gang violence between the Bloods and the Crips. KH has been identified as a member of the Crips and has also been arrested for a robbery on 8/12/19. LEO information suggests that KH was at the scene of a recent shooting and was getaway driver. There have been other acts of violence between both gangs since the recent shooting and LE has developed information that additional retaliatory shootings are imminent.

(ECF No. 33 at 2.)

The Government also indicates that "an unpaid, confidential informant at liberty in the Port Chester community . . . told the Port Chester Police Department that he/she had heard that [Defendant] was the shooter in the August 1, 2019 shooting and was in a Blue Honda getaway

5

car that Smith was driving." (*Id.* ¶ 40.) Defendant challenges the existence and reliability of this confidential informant. (ECF No. 29 at 4.)

A report dated October 3, 2019 indicates that "On September 12, 2019, pursuant to law enforcement intelligence and in response to recent gang violence in Port Chester, the Probation Department conducted two search operations pursuant to the special conditions of supervised release. As a result of the searches, valuable intelligence was gathered and in addition, a firearm was recovered from the residence of [Defendant]." (*Id.* ¶ 47.) Probation later confirmed that the second search conducted that morning was a search of Smith's residence. (*Id.* ¶ 48.)

## STANDARD

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118–19 (2001). "Warrantless searches are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Jaiman*, 2018 WL 1870483, at *6 (S.D.N.Y. Apr. 17, 2018) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

"The Supreme Court has acknowledged the need for exceptions to the warrant and probable cause requirements of the Fourth Amendment where an administrative agency has 'special needs, beyond the normal need for law enforcement.'" *United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (internal

6

quotation marks and citation omitted)). One such exception exists where a warrantless search is authorized by a condition of probation and is supported by reasonable suspicion. *United States v. Knights*, 534 U.S. 112, 122 (2001).

An officer has a reasonable suspicion when he or she is "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). The "reasonable suspicion" inquiry requires courts to "look to the totality of the circumstances," *United States v. Pena*, 351 F. Supp. 3d 723, 729 (S.D.N.Y. 2019), and is an "undeniably low threshold." *United States v. Washington*, 2012 WL 5438909, at *10 (S.D.N.Y. Nov. 7, 2012).

"An evidentiary hearing on a motion to suppress ordinarily is required only if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *United States v. Filippi*, 2013 WL 208919, at *9 (S.D.N.Y. Jan. 16, 2013) (quoting *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992)). A defendant may not rely on "bald assertions," and "[w]ithout specification of the factual basis" that supports suppression, "the district court is not required to have a hearing." *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998); *see also United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) ("A hearing is not required if the defendant's statements are general, conclusory or based on conjecture."). Moreover, although the Government's reliance on "unsworn statements" may generally not be enough for a court to make a finding of fact, *see United States v. Marquez*, 367 F. Supp. 2d 600, 603 (S.D.N.Y. 2005), a defendant nevertheless bears the initial burden of establishing, by an affidavit of someone with personal knowledge of the underlying facts, that there are, in fact, disputed issues of material fact, *Viscioso*, 711 F. Supp. at 745. "[A]n attorney's affidavit, absent personal knowledge[,] is

7

insufficient to justify a suppression hearing." *United States v. Cook*, 348 F. Supp. 2d 22, 28 (S.D.N.Y. 2004). To defeat a suppression motion, "[t]he Government bears the burden of proof as to establishing probable cause" or reasonable suspicion, as the case may be. *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008). The Government must make this showing "by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

**I.    Reasonable Suspicion**

*A.    Rationale*

The terms of Defendant's supervised release prohibit him from, among other things, committing additional crimes and associating with other persons convicted of a felony. Defendant argues that Probation searched his residence for the purpose of finding evidence and contraband related to the shootings—specifically a firearm—and that Probation lacked reasonable suspicion that Defendant possessed any such evidence or contraband.[2] (ECF No. 29 at 9.) The Government posits that the search of Defendant's home was justified to find evidence and contraband of the August 5, 2019 robbery, Defendant's contact with Smith, and the August 1, 2019 shooting.

The Government argues that because there was reasonable suspicion to suspect Defendant had evidence from the August 5, 2019 robbery and his contact with Smith in his residence, the search was objectively justified, and the Court need not examine whether there was reasonable suspicion to search Defendant's residence for a firearm. The Court agrees. "Reasonable suspicion is an objective standard; hence, the subjective intentions or motives of the

---

[2] Defendant supports his point with evidence including (1) the officers asked "where is the gun?" during the search and did not attempt to search for other items, (2) a simultaneous search of Smith's residence was conducted, (3) no search was conducted of the other alleged perpetrators of the robbery, and (4) the Probation Search Plan Report primarily focused on the ongoing gang violence, although it did also reference the robbery arrest.

officer making the stop are irrelevant." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000); *accord Whren v. United States*, 517 U.S. 806, 814 (1996). Probation had a "reasonable belief that contraband or evidence of a violation of the conditions of release [might] be found" when it conducted the September 12, 2019 search. The record reflects that Probation reasonably believed that evidence including the distinctive shirt, backpack, and playing cards Defendant allegedly wore/possessed during the August 5, 2019 robbery, the chain Defendant allegedly snatched during the August 5, 2019 robbery, and messages and calls with Smith could be recovered at Defendant's residence.

Further, Probation may have also been justified in searching Defendant's residence on the basis of Defendant's criminal history with Smith, Smith's involvement in the summer shootings, Defendant's presence at two of the summer shootings, and a confidential informant's identification of Defendant's involvement in one of the shootings.[3] However, the Court need not examine whether Probation had a reasonable belief to search Defendant's residence on the basis of the shooting evidence alone because the search was justified on the basis of the August 5, 2019 robbery, Defendant's interactions with Smith, and the fact that the search did not exceed the scope of a search for evidence of these violations.

    B.    *Staleness*

Defendant argues that even if reasonable suspicion existed, the reasonable suspicion was nonetheless stale due to the passage of time. "In the Second Circuit, the principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the

---

[3] Defendant challenges the reliability of the confidential informant, arguing that "[p]resumably if there was any truth, reliability or a basis of knowledge to the supposed confidential informant's statement, [Defendant] would have been arrested and charged with the August 1, 2019 shooting." (ECF No. 29 at 10.) The Court rejects this form of *post hoc* inquiry; rather the appropriate inquiry is whether the tip bore sufficient indicia of reliability at the time it was relied upon. *United States v. Elmore*, 482 F.3d 172, 179 ("Reasonable suspicion may be based upon information from a confidential informant so long as the tip bears sufficient indicia of reliability.").

nature of the conduct alleged to have violated the law." *Diamondstone v. Macaluso*, 148 F.3d 113, 124 (2d Cir. 1998). The search of Defendant's residence occurred approximately five weeks after the shootings and robbery. However, the types of items purportedly sought, including clothing, the snatched chain, a backpack, playing cards, and exchanges between Smith and Defendant, are the types of property that can reasonably be expected to be kept in a Defendant's residence for an extended period of time. *See United States v. Willette*, No. 19 Cr. 196 (LGS), (S.D.N.Y. Aug. 8, 2019), ECF Doc. No. 30 at 8:16-24 (finding that "distinctive clothing observed" on surveillance footage "which was part of evidence sought" in a search "could reasonably be expected to remain in the defendant's residence for an extended period of time"). Further, Defendant's alleged contact with Smith is suggestive of continuing conduct, making the reasonable suspicion less likely to be stale. *United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006) (information regarding unlawful continuing conduct is less likely to become stale than information regarding isolated and random instances of unlawful conduct).

      C.     *Plain View Restriction*

Defendant points to a *different* condition of his supervised release which provides that "the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer." (ECF No. 29 at 13.) Defendant argues that because the firearm recovered was not in plain sight—it was inside a backpack—this condition does not apply. The Court agrees; however, such distinction is irrelevant because the search was authorized by reasonable suspicion.

**II.**    **Time and Manner**

Defendant argues that even if the search was authorized by reasonable suspicion, it was not conducted "at a reasonable time and in a reasonable manner." Specifically, Defendant takes

10

issue with the 6:00 a.m. timing of the search and argues that "having a swarm of law enforcement officers barge in . . . with hands on their weapons under the guise that it was a routine 'probation search' was entirely unwarranted and unreasonable.'" (ECF No. 29 at 12.) Defendant does not cite to any legal authority for his argument and the Court cannot find any. In fact, courts in this Circuit have acknowledged that "once police officers have reason to believe that a suspect lives in a particular dwelling, they may reasonably infer that he will be home early in the morning." *United States v. Camilo*, 287 F. Supp. 2d 446, 450-51 (S.D.N.Y. 2003). Defendant does not allege that the search was performed in an unconstitutional manner and merely alleges that it was early and there were many law enforcement officers with weapons. Therefore, the Court concludes that the search was conducted at a reasonable time and in a reasonable manner.

**III.   Stalking Horse Theory**

Other circuits have recognized a "stalking horse" theory whereby a probation officer may not use his/her authority to conduct a search to help other law enforcement entities evade the requirements of the Fourth Amendment. *United States v. Watts*, 67 F.3d 790, 794 (9th Cir. 1995). Defendant raises this issue in the instant case for the sake of preserving it but concedes that "the Second Circuit has thus far rejected the stalking horse theory of defense to a warrantless search." (ECF No. 29 at 14.) Because the Second Circuit has rejected the stalking horse theory, *United States v. Reyes*, 283 F.3d 446, 471 (2d Cir. 2002), the Court finds there is no merit to Defendant's argument.

**IV.   Suppression Hearing**

The parties do not dispute that Defendant was arrested and charged with the August 5, 2019 robbery, that the purported robbery victim identified Defendant as snatching his chain, that Defendant appeared on the surveillance video of the August 5, 2019 incident, or that Defendant

11

interacted with Smith while on supervised release. Because these undisputed facts alone are sufficient to support a finding of reasonable suspicion to justify the September 12, 2019 search, the Court finds that a suppression hearing to resolve other factual disputes including the officers' subjective rationale for the search and the reliability of the confidential informant, is unnecessary. Therefore, Defendant's motion for a suppression hearing is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress and for a hearing is DENIED. The Clerk of the Court is kindly directed to terminate the motion at ECF No. 28.

Dated:   April 16, 2021                                                   SO ORDERED:

White Plains, New York

_____

NELSON S. ROMÁN

United States District Judge