**PARKER AND CARMODY**
ATTORNEYS AT LAW
30 EAST 33RD STREET
6TH FLOOR
NEW YORK, N.Y. 10016

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/15/2026

DANIEL S. PARKER
MICHAEL CARMODY
CHRISTINA S. COOPER

April 12, 2022

TELEPHONE: (212) 239-9777
FACSIMILE: (212) 239-9175
DaniellParker@aol.com

The Clerk of Court is kindly directed to terminate
the motion at ECF No. 60 as moot.
Dated: May 15, 2026

White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

**By ECF and email**
Hon. Nelson S. Roman
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re: **United States v. Kassem Harris**
**19 Cr 746 (NSR) and VOSR 14 Cr 465 (NSR)**

Dear Judge Roman:

We write on behalf of Kassem Harris in advance of the VOSR hearing currently scheduled for April 13, 2022 at 11 a.m.

As we advised the Court, the Government and Probation by letter on March 17, 2022, Mr. Harris intends to admit to violating his supervised release on the next court date. Pursauant to an agreement with the Government, Mr. Harris intends to admit to Specifications 1 and 2 and the Government intends to dismiss Specifications 3 and 4 in the most recently amended VOSR dated April 11, 2022.[1]

We submit this brief letter requesting that the Court sentence Mr. Harris to *no more* than 90 days home incarceration enforced by location monitoring as initially recommended by Probation in its Request for Modification dated February 22, 2022 and proposed in court on March 2, 2022.

There does not appear any rational support for Probation and the Government's latest recommendation that Mr. Harris serve 16 months incarceration.

---

[1] Specifications 3 and 4 allege that Mr. Harris committed Trespass in the Third Degree last week after he was arrested inside his mother's building. Port Chester police assert that Mr. Harris was not permitted to be at the premises after serving him with a "No Trespass" order on February 12, 2022. We believe that "No Trespass" order is neither valid nor constitutional and that Port Chester police had no authority to direct Mr. Harris to refrain from going to his mother's building.

1

MEMO ENDORSED

And after we notified the Court of Mr. Harris' intention to admit to specifications in the VOSR, most importantly, Mr. Harris was diagnosed with a cerebral cyst that requires immediate and future medical attention.  On or about March 21, 2022, Mr. Harris believed he had COVID and he went to White Plains Hospital. Not only was he diagnosed with COVID, but on March 23, 2022, he was also diagnosed with a retrocerebellar arachnoid cyst[2], which will require treatment and follow-up medical visits going forward.  Copies of his medical records are attached hereto as Exhibit A.[3]

On April 6, 2022, Mr. Harris was seen by a neurologist who recommended that he schedule another appointment for an MRI in advance of treatment. Mr. Harris is waiting confirmation of the next appointment.

Even putting aside his newly discovered medical condition – which clearly cannot be effectively monitored and treated should he be incarcerated – there is no rational reason for him to be incarcerated now given the underlying acts in the VOSR as well as the procedural history in this matter.

Procedurally, on February 14, 2022, Probation Officer Erica Cudina notified counsel that Mr. Harris had been involved in a fight that had been captured on video and that Probation was seeking a consensual modification of the terms of supervision *in which Mr. Harris would be placed on home detention for a period of 90 days.*  Counsel asked to see the video so that he could review the evidence and properly advise Mr. Harris.  Probation texted a portion of the video to counsel, but we were unable to play it in the format provided and we so advised Probation. Probation acknowledged that it had only sent portions of the video.  Thereafter, counsel immediately conferred with the Government and the Government advised counsel that it, too, could not play the video. On February 22, 2022, Probation submitted a request for modification of Mr. Harris's conditions of supervised release to the Court and on February 23, 2022, the Court directed Mr. Harris to appear on March 2, 2022. Upon information and belief, Probation also submitted a copy of the video to the Court, which was unable to play it as well.

On March 2, 2022, Mr. Harris did not agree to the proposed consensual modification (he and counsel had still not been provided with any evidence or a play-able version of the video) and the Court warned Mr. Harris that if a hearing were conducted, that he could be sentenced to the maximum punishment. The case was adjourned for a VOSR hearing for March 24, 2022.

On March 3, 2022, counsel picked up a play-able version of the video from Probation. On March 4, 2022, Probation filed the VOSR petition and included a sentence recommendation of 8 months *incarceration*, to be imposed consecutively on each docket, for a total recommended period of incarceration of 16 months. The justification for the sentence recommendation was

---

[2] See: Arachnoid Cysts | Johns Hopkins Medicine
[3] Medical Records have been redacted from the public filing and we request that they be filed under seal.

almost exactly the same justification as the one put forth in its prior request for a consensual modification to home detention – except it now included a sentence saying that Mr. Harris should be incarcerated for believing that the proposed consensual modification of temporary home confinement to the terms of his supervised release was too harsh a punishment.

In the initial request dated February 22, 2022, Probation wrote:

"The Probation Department recommends and believes that a period of home detention will serve as an appropriate sanction for his behavior, mitigate the safety risk Mr. Harris poses to the public, and deter him from any future non-compliance.
Counsel asked to see the video of the incident."

In the request dated March 4, 2022, Probation wrote:

"It is also quite concerning that Mr. Harris admitted to the undersigned that he was the aggressor in the altercation and feels that a period of home detention to serve as a sanction is too harsh. As such, it is prudent that Mr. Harris be returned to Court to face the consequences of his actions and this office believes this will address his behavior, mitigate the risk to the public, and deter him from any future non-compliance."

In other words, because Mr. Harris was initially unwilling to consent to a 90-day period of home incarceration without having the benefit of conferring with counsel and without counsel having the benefit of reviewing the evidence, within just a few days, Probation altered its recommendation, changing its recommended sentence from a 90-day period of home detention to now seeking a period of *incarceration* of 16 months.

Within days of counsel reviewing the evidence, and after reviewing it with Mr. Harris, we contacted the Government and told it that Mr. Harris was willing to admit to the specifications. Instead of recommending the 90-day period of home incarceration (which we still believe is not necessitated), the Government said that it was now recommending a sentence of 16 months incarceration rather than the 90-day period of home incarceration recommended by Probation one week earlier.

Thereafter, we promptly notified the Court that no evidentiary hearing on the VOSR is necessary because Mr. Harris intends to admit to the specifications then pending despite the fact that the parties disagreed on an appropriate sentence.

Once again, there does not appear to be any basis for: 1) the Government's latest recommendation of such a harsh sentence given the nature of the violations; and 2) such a drastically different recommendation than the one previously recommended by Probation one week earlier – other than Probation's statement that Mr. Harris should now go to prison for 16 months because he believed Probation's initial home incarceration recommendation was too harsh.

3

Mr. Harris admittedly smoked marijuana, but has been testing negative most recently as confirmed by drug test reports in possession of the Department of Probation.

On February 1, 2022, Mr. Harris admittedly attempted to assault an individual who had threatened him,[4] who came to Mr. Harris's building armed with a knife and ready to use it, and who used it, stabbing Mr. Harris in the back, which necessitated Mr. Harris having to go to the hospital.

Mr. Harris, knowing that he had been previously threatened by that individual, did not wait for the assailant to throw the first punch and thus, he was the initial aggressor.  But there is no dispute that on the date of the incident, that individual stabbed Mr. Harris in the back multiple times with a knife. A careful review of the video of the incident not only confirms that Mr. Harris was stabbed, but it demonstrates that despite the fact that Mr. Harris threw the first punch, the other man already had his hand on a knife in his jacket pocket because he was able to immediately use it, he stabbed Mr. Harris repeatedly, and Mr. Harris was the only person injured. No criminal charges have been lodged against Mr. Harris as a result of this fight which occurred on February 1, 2022 in the lobby of Mr. Harris's mother's building.  Moreover, a careful review of the video shows that not only did Mr. Harris stop fighting with the man on his own volition, but that he and another person disarmed the man with the knife and other than throwing a few punches thereafter, they took no further action after the man was lying on the floor while they were in possession of the knife. Specifically, after taking away the knife, Mr. Harris simply walked away, as did the man who had come with the knife, both walking away in the same direction as each other, without further incident.

Now, Probation and the Government seek an excessively punitive sentence despite the fact that nothing has changed from the initial modification request other than Mr. Harris's counsel requesting to see and play the video of the incident prior to advising Mr. Harris.

In other words, the Government appears to be seeking to punish Mr. Harris and to deprive him of Due Process by altering its sentencing recommendation because Mr. Harris and counsel wanted to see the video depicting the evidence before agreeing to a modification of the terms of supervised release.

When a Court deprives a person of his liberty, it is a very serious event and one we know that this Court does not take lightly. It is extremely disconcerting when Probation and the Government lose sight of justice and ask the Court to impose any period of incarceration, let alone, a lengthy one, simply because a defendant expressed his view that the proposed modification to his conditions of supervise release was too harsh given the underlying reason. In other words, this recommendation is not based on the underlying events; it is based on Probation

---

[4] Copies of a text exchange between the man who stabbed him with a knife and Mr. Harris are attached hereto as Exhibit B and confirm that the man accused Mr. Harris of "fucking my bitch," followed by other texts clearly intended to threaten Mr. Harris.

and the Government's view that Mr. Harris should have capitulated to the consensual request without having the benefit of meaningful representation.

One can only conclude that the following factors have impacted the Government's most recent recommendation:

- In its then original recommendation on these cases, the Government sought a sentence nearly double the sentence this Court determined was reasonable; now because the Government disagreed with the Court's original sentence, it seeks its pound of flesh (See Shakespeare's *Merchant of Venice*, Act 4, Scene 1); and/or
- The Government is upset that Mr. Harris did not simply consent to a deprivation of his liberty (home incarceration) without having the benefit of counsel having a meaningful opportunity to review the violation allegations and after reviewing relevant evidence; and/or
- Sadly, the Government, in its overzealous advocacy, has lost sight of its obligation to seek justice.

Simply put, there can be no legitimate basis to support Probation and the Government's change in position – from recommending 90 days home incarceration to recommending 16 months in prison, other than the passage of one week's time. There are no new facts and there is no new information in the Government's possession justifying its now extreme request.

At the time of Mr. Harris's original sentencing, the Government sought a sentence of between 34 and 47 months (Dkt. 50 on 19 Cr 746 and Dkt. 79 on 14 Cr 465). For reasons set forth in our sentencing submissions, we suggested that the Government was engaging in overzealous advocacy and that a sentence of Time Served was appropriate. The Court, after carefully considering all of the relevant factors, disagreed with the Government's position and sentenced Mr. Harris to a period of incarceration of 30 months total. Mr. Harris had been in custody for 26 months and he was released from custody three weeks after being sentenced. Now, once again, the Government engages in overzealous advocacy, unabashedly and undaunted.

The gravamen of Mr. Harris's conduct is that he smoked marijuana and that he threw the first punch in a fight with a man who had threatened him, who came to Mr. Harris's building armed with a knife, who stabbed Mr. Harris multiple times, and who walked away from the fight after it was over along with Mr. Harris. The fact that Mr. Harris was the aggressor in this altercation – given all of the facts – is certainly no reason to send him back to prison.

We ask the Court to impose a sentence of no more than 90 days home incarceration enforced by location monitoring. No prison sentence is justified and Mr. Harris needs to be able to attend to his medical condition.

Respectfully submitted,

Daniel S. Parker
Parker and Carmody, LLP
30 East 33rd Street
6th Floor
New York, NY 10016
917-670-7622

Cc:  All parties (by ECF)
     AUSA David Felton
     (by email)

6